# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 139 | **DATE** | 6/29/2000 |
| **CASE TITLE** | Fred Duerr, Sr. vs. Minnesota Mining and Manufacturing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted [5-1] and Plaintiff's complaint is dismissed.

(11) ■ [For further detail see

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 30 2000 | 19 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/28/2000 | |
| DK | courtroom deputy's initials | | date mailed notice DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRED DUERR, SR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 00 C 0139 |
| ) | |
| MINNESOTA MINING and ) | Magistrate Judge Morton Denlow |
| MANUFACTURING COMPANY, a ) | |
| foreign corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case is now before the Court on the motion of Defendant Minnesota Mining and Manufacturing Company ("3M") to dismiss Plaintiff Fred Duerr, Sr.'s ("Plaintiff" or "Duerr") complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Because the parties relied on factual material outside of the complaint, this motion will be treated as one for summary judgment pursuant to Fed.R.Civ.P. 56. The Court grants 3M's motion for summary judgment because: 1) Plaintiff failed to exhaust the grievance/arbitration procedures of the collective bargaining agreement; 2) Plaintiff has failed to allege a union breach of duty of fair representation; and 3) because the action was filed after the six month statute of limitations expired.

# I. FACTUAL BACKGROUND

Plaintiff Duerr was employed by Defendant 3M as a maintenance mechanic at its Bedford Park, Illinois facility until his resignation on March 24, 1999. Duerr's employment was subject to a collective bargaining agreement between the American Federation of Grain Millers, Local 232 ("Local 232" or "Union") and 3M. Plaintiff originally brought this action in the Circuit Court of Cook County, against both 3M and Local 232; subsequently, the case was removed to this Court. Local 232 was voluntarily dismissed as a party defendant.

## A. OVERTIME GRIEVANCE

In March, 1999, 3M and Local 232, were signatories to a Collective Bargaining Agreement ("CBA") for the benefit of Local 232's members and 3M employees. The CBA outlines a five-step grievance procedure culminating in binding arbitration. (CBA § 7.02). The first step requires the employee to take up with the supervisor any complaints or grievances as to the intent and application of the provisions of the CBA. (CBA § 7.03). Pursuant to the provisions, any such grievance or complaint not submitted to the supervisor within two weeks of the occurrence giving rise to the grievance or compliant, is considered void. (*Id.*).

In 1999, a dispute arose between 3M and union employees, including Plaintiff, with regard to overtime wages. (Pl. Comp. ¶ 7). Local 232 filed a number of grievances against 3M in connection with this dispute. (Pl. Comp. ¶ 8). Plaintiff's claim was made part of Local 232's grievances against 3M. (Pl. Comp. ¶ 9).

**B. SETTLEMENT AGREEMENT**

On March 16, 1999, 3M and Local 232 entered into a settlement agreement to resolve the wage grievance. (Pl. Comp. Ex. A, "Settlement Agreement"). The Settlement Agreement provides in relevant part as follows:

> To each maintenance mechanic, currently working, an initial payment of 19 hours at time and one half during the month of March, followed by a monthly payment of sixteen hours at time and one half for each of the remaining months of 1999.

Plaintiff was employed as a maintenance mechanic for 3M at the time the Settlement Agreement was reached. (Pl. Comp. ¶ 13). In early March 1999, Plaintiff gave 3M a two week notice of intention to resign. (Thackston Aff. ¶ 4). During the week of March 8, 1999, Plaintiff called Local 232 President, Wayne Thackston ("Thackston"), and informed him of his notice to resign. (*Id.*). Within a week after reaching the Settlement Agreement, Plaintiff again called Thackston and asked him about the agreement. (Thackston Aff. ¶ 5). Thackston told Plaintiff that an agreement had been reached but that he would not be included because he had resigned. (*Id.*). Plaintiff advised Thackston that he should be included, to which Thackston responded that he would make sure that Plaintiff received the first installment because he was drawing a paycheck in March 1999, but that Plaintiff would not be entitled to anything thereafter. (*Id.*). Plaintiff received the first installment under the Settlement Agreement in March, 1999, but did not receive any payment for April through December, 1999. (Pl. Comp. ¶¶ 15 and 17). Plaintiff resigned from 3M and withdrew as a member of

3

Local 232, on March 24, 1999. (Pl. Comp. ¶ 16).

C.  POST-RESIGNATION EFFORTS TO RECEIVE PAYMENTS

On May 9, 1999, Thackston received a letter from Plaintiff and another employee requesting a copy of the Settlement Agreement. (Thackston Aff. ¶ 6). On May 20, 1999, Thackston responded to Plaintiff's letter by mailing Plaintiff a letter reiterating that Plaintiff was not entitled to any payment under the Settlement Agreement after March, 1999 because he was not employed as of April, 1999. (Thackston Aff. ¶ 7).

Plaintiff filed this action in the Circuit Court of Cook County on December 13, 1999. Plaintiff alleges in Count I that 3M and Local 232 breached the Settlement Agreement by refusing to make payments to Plaintiff. (Pl. Comp. ¶ 18). In Count II, Plaintiff alleges that he was not paid overtime wages to which he was entitled pursuant to the Collective Bargaining Agreement and seeks to recover these overtime wages pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. (Pl. Comp. at 4, ¶ 14).

3M and Local 232 removed this matter to this Court and filed Motions to Dismiss in lieu of their answers to the complaint. Subsequently, by stipulation of the parties, Local 232 was dismissed with prejudice on March 1, 2000. 3M now argues that Plaintiff's claims should be dismissed because: 1) Plaintiff failed to exhaust his contractual grievance/arbitration remedies contained in the Collective Bargaining Agreement; 2) Plaintiff failed to allege the Union (Local 232) breached its duty of fair representation; and 3) the action is barred by the applicable six month statute of limitations. Because the parties have

4

relied upon factual material outside of the complaint, the Court will consider Defendant 3M's motion to dismiss as a motion for summary judgment. *Edward Gray Corp. v. National Union Fire Ins. Co.*, 94 F.3d 363, 367 (7th Cir. 1996). The parties were advised of the Court's intention in this regard and were given additional time to supplement their briefs. No supplemental briefs were filed. Oral argument was held on June 22, 2000.

## II. LEGAL ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). When reviewing the record on summary judgment, the court must draw all reasonable inferences in a light most favorable to the nonmoving party. *See Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998).

### A. THIS COURT HAS JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT

Plaintiff's claims are properly brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which provides in relevant part as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Section 301 suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts and preempt state actions. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430 (1987). Even if the plaintiff makes no mention of § 301 in the complaint, § 301 nevertheless may displace entirely a state cause of action. *Atchley v. Heritage Cable Vision Assoc.,* 101 F.3d 495, 498 (7th Cir. 1996).

In the case at bar, Plaintiff was a member of Local 232 and an employee of 3M. Local 232 and 3M were signatories to a CBA; thereafter, the Union and 3M entered into a Settlement Agreement to resolve the wage grievance. In Count I, Plaintiff alleges that he was due overtime wages under the CBA and the subsequent Settlement Agreement. Thus, this action is a suit for violation of a contract between an employer, 3M, and a labor organization, Local 232, representing employees affecting commerce, and preempted by the LMRA. In Count II, Plaintiff seeks to recover these same wages pursuant to the Illinois Wage Payment and Collection Act, 820 ILSC 115/1 *et seq.* Adjudication of this claim requires interpretation of the CBA and is also preempted by the LMRA. *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1179 (7th Cir. 1993). In sum, each count of Plaintiff's complaint is preempted by federal labor law, and this Court has jurisdiction over both counts pursuant to the LMRA.

## B. PLAINTIFF'S ACTION IS BARRED BECAUSE HE FAILED TO EXHAUST THE GRIEVANCE/ARBITRATION PROCEDURE

Federal labor law mandates that employees seeking to sue for breach of a collective bargaining agreement must first exhaust the grievance/arbitration procedures set forth by the collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616 (1965); *Atchley*, 101 F.3d at 501. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914 (1967). For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. *Id.*

The Supreme Court stated two reasons in support of the employees' duty to exhaust the grievance/arbitration remedies. *Republic Steel*, 379 U.S. at 653, 85 S.Ct. at 616. First, Congress had "expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant." *Id.* To this end, the Court referred to Section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d), which provides that "[final] adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." *Republic Steel*, 379 U.S. at 653, 85 S.Ct. at 616. Second, the Court noted that to allow a contrary rule, permitting an

employee to bring suit under § 301 without attempting to exhaust the contractual grievance procedures, would "deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Id.*

Certain exceptions have been carved out which allow an employee to seek adjudication despite his failure to exhaust the contractual grievance procedures. One exception becomes operative when the conduct of the employer amounts to repudiation of the contractual procedures. *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914. A second exception permits the employee to circumvent the grievance procedure when the union has the sole power under the contract to invoke the higher stages of the grievance procedure and the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. *Id.* In response to the conditions present in the second exception, the Supreme Court established the basis for a hybrid § 301 claim, whereby the employee may sue the employer for breach of contract and be excused from his obligation to exhaust the contractual grievance procedure, provided he can simultaneously prove the union breached its duty of fair representation. *Id.* at 186, 87 S.Ct. at 914.

The Plaintiff does not allege any facts giving rise to the previous exceptions. Indeed, the Plaintiff explicitly states that he does not allege a breach of Local 232's duty of fair representation. (Pl. Response p. 2). Rather, Plaintiff proposes it is within the discretion of this Court to excuse his obligation to exhaust the contractual grievance procedure. In support

of this contention, Plaintiff cites *Clayton v. International Union*, 451 U.S. 679, 101 S.Ct. 2088 (1981).

Plaintiff's reliance on *Clayton* is misplaced, because *Clayton* relates to the obligation of an employee-plaintiff to exhaust the Union's *internal grievance procedures* as distinguished from the obligation to exhaust the *grievance/arbitration procedures* set forth in the collective bargaining agreement. The first sentence of the *Clayton* opinion establishes that an employee seeking a remedy for an alleged breach of the collective bargaining agreement between his union and employer "must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement." *Id.* at 681, 101 S.Ct. at 2091. Therefore, the Supreme Court emphasized the need for a plaintiff/employee to exhaust the contractual grievance procedures in cases such as the instant case. The Supreme Court next identified the issue before it as whether an employee "must *also* attempt to exhaust the internal union appeals procedures established by the union's constitution" before he may sue under § 301. *Id.* at 682, 101 S.Ct. at 2091. (emphasis added). Furthermore, the contractual procedures the Supreme Court addressed in *Republic Steel* are significantly different from the internal union procedures which are wholly a creation of the union's constitution and not bargained for by the union or the employer in the collective bargaining agreement. *Id.* at 687, 101 S.Ct. at 2094.

Defendant 3M does not propose Plaintiff must also exhaust internal union appeals procedures in order to maintain this suit. Hence, the Supreme Court's analysis in *Clayton*

9

is not applicable to the present action; and further, the *Clayton* decision does not afford any discretion to this Court in excusing Plaintiff from exhausting the grievance procedures set forth in the Collective Bargaining Agreement.

Next, Plaintiff argues that the Union owes him no further duty as an ex-employee, and consequently, Plaintiff is not required to exhaust the grievance procedures. To support this argument, Plaintiff relies on the Sixth Circuit decision in *Anderson v. AT&T Corp.*, 147 F.3d 467 (6th Cir. 1998), wherein the court permitted a group of AT&T employees, previously represented by a union, to proceed with a "straightforward" § 301 suit against the employer. The plaintiffs had been members of a bargaining unit represented by the Communications Workers of America ("CWA") who entered into an agreement with AT&T which entitled them to certain supplemental wage and pension payments under the collective bargaining agreement. *Id.* at 469. Subsequently, the plaintiffs transferred to AT&T's Columbus plant to be part of a bargaining unit represented by the International Brotherhood of Electrical Workers ("IBEW"), and there, they ceased receiving their wage supplements. *Id.* at 471. The plaintiffs unsuccessfully sought assistance from both the CWA and IBEW. *Id.* The plaintiffs' conundrum was that the CWA was no longer their bargaining representative and could not bargain on their behalf; likewise, the IBEW could not bring a grievance to enforce a right created under an agreement to which it was not a party. *Id.* The plaintiffs' claim against AT&T was found to be a "straightforward" one because the union owed no duty to the plaintiffs because they were not members of the bargaining unit represented by the union

at the time they learned of the violation of the contract. *Id.* at 473. Consequently, the plaintiffs were not required to exhaust the grievance procedures and the action was subject to the state's statute of limitations for written contracts. *Id.* at 475.

Conversely, Plaintiff Duerr was a part of the bargaining unit at the time the alleged grievance occurred wherein 3M and Local 232 refused to pay him the wages owed according to the CBA and the Settlement Agreement. Additionally, Plaintiff continued to be a part of the bargaining unit during and after he became aware of the alleged contract violation. As the Thackston affidavit indicates, Plaintiff was informed of the Union's decision within a week of March 16, 1999, and Plaintiff continued to be employed by 3M and a member of the Union until March 24, 1999. Thus, the Union owed Plaintiff a duty at the time the decision not to pay him was made. The fact that Plaintiff subsequently resigned from 3M and withdrew his membership in the union did not extinguish the union's duty for alleged violations occurring while Plaintiff was a member of the bargaining unit. *Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 766 (7th Cir. 1988). The court in *Merk* elaborated, "Persons represented by a union and covered by a collective bargaining unit—even those no longer working—must exhaust union remedies before filing suit under § 301, which may imply that the union always administers the collective bargaining unit agreement even for those no longer classified as statutory "employees." *Id.*

*Roman v. United States Postal Service*, 821 F.2d 382 (7th Cir. 1987), is also applicable to the case at bar. In *Roman*, the plaintiff, worked for the United States Post

Office and was represented by a union, the National Association of Letter Carriers. *Id.* at 383. His employment was governed by a collective bargaining agreement. *Id.* A disagreement between Roman and the Postal Service led to Roman's resignation. *Id.* at 384. Later, Roman filed a due process action against the Postal Service seeking to recover, among other things, backpay. *Id.* The Postal Service sought to have the action dismissed due to Roman's failure to exhaust the grievance procedure contained in the collective bargaining agreement. *Id.* Roman argued that he was not required to exhaust the grievance procedures because the agreement only pertained to "employees." *Id.* at 386. Further, Roman argued that since he had resigned prior to learning of the grievance, he was no longer an "employee" within the scope of the agreement, and thus not required to exhaust the grievance procedures. *Id.* at 387. Roman analogized his situation to that of retired employees, who are not required to exhaust the grievance procedures. *Id.* The court rejected Roman's argument, noting that the Supreme Court determined that employees that quit were distinguished from retired employees because employees who quit were still members of the active workforce available for hire. *Id.* (citing *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 168, 92 S.Ct. 383 (1971)). Additionally, the court found Roman's situation distinguishable from retirees because Roman's claim concerned events that occurred while he was an employee and a member of the bargaining unit to whom the union owed a duty of fair representation. *Roman*, 821 F.2d at 387. Finally, the court asserted Roman's situation was no different than other employers who quit or are fired and therefore

are limited to the bargaining agreement and required to attempt to exhaust their contractual remedies. *Id.*

In the instant case, Plaintiff Duerr never filed any grievance in connection to Defendant's refusal to pay Plaintiff under the Settlement Agreement even though the CBA gave him the right to do so. This Settlement Agreement is subject to the grievance procedures contained in the CBA because the underlying dispute is subject to the CBA. *See Niro v. Fearn International Inc.*, 827 F.2d 173 (7th Cir. 1987). Additionally, the Settlement Agreement itself was based on an interpretation of the CBA; thus, any further interpretation of the Settlement Agreement may rely on the underlying CBA.

Plaintiff does not assert, nor does the record indicate, that any of the exceptions to the duty to exhaust the contractual grievance requirements are present. Therefore, Plaintiff's failure to either exhausted or attempt to exhaust the grievance/arbitration procedures set forth within the CBA are fatal to his claims.

### C. PLAINTIFF'S ACTION FAILS BECAUSE HE DID NOT ALLEGE A UNION BREACH OF DUTY

In order for Plaintiff to succeed on a § 301 claim against 3M for breach of the CBA, the Plaintiff must first establish that the union breached its duty of fair representation. The Seventh Circuit declared the following:

> When as in this case the collective bargaining agreement establishes a grievance procedure for processing claims for breach, with arbitration if the grievance procedure does not produce a satisfactory result, and the union is cast in the role of representative of the aggrieved worker

13

> in the grievance and arbitration processes, the worker cannot prevail in
> his section 301 suit merely by showing that his grievance is a just one.
> That is, he cannot show just that the company violated the collective
> bargaining agreement. He must also show that by arbitrarily refusing
> to press his grievance the union violated its duty to represent all
> members of the bargaining unit fairly.

*Brazinski*, 6 F.3d at 1179; *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 869.

To characterize an action against the employer as one for breach of contract ignores the significance of the fact that it was brought in the District Court pursuant to § 301 and that the indispensable predicate for such an action is to demonstrate that the union breached its duty of fair representation. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1564 (1981); *Souter v. International Union*, 993 F.2d 595, 599 (7th Cir. 1993).

In the present case, Plaintiff does not allege that the Union breached its duty of fair representation. Indeed, the Union, Local 232, has been dismissed by stipulation. While the employee may, if he chooses, sue one defendant and not the other; the case he must prove is the same whether he sues one, the other or both. *Vaca*, 386 U.S. at 186, 87 S.Ct. at 914. Plaintiff was not a signatory to the contract which he seeks to enforce. Therefore, aside from a situation where the union's duty to the employee is extinguished, the employee lacks standing to sue upon the contract unless he asserts both breach of contract by the employer and breach of fair representation by the union. *Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 326 (7th. Cir. 1992). Accordingly, it is an "indispensable predicate" that Plaintiff prove the Union breached its duty of fair representation, and Plaintiff's failure to even allege

such a breach is fatal to this action.

## D. PLAINTIFF'S ACTION IS UNTIMELY

The LMRA does not contain an express statute of limitations. Therefore, this Court must determine the appropriate statute of limitations period for a § 301 action for breach of the collective bargaining agreement by the employer. The Supreme Court determined that a six month statute of limitations was appropriate in a hybrid § 301 action. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 2285 (1983). The Court borrowed this statute of limitations period from § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b) (1988), reasoning that a NLRA claim is analogous to the hybrid action, because it was designed to accommodate the interests at stake in such suits. *Del Costello*, 462 U.S. at 171, 103 S.Ct. at 2294. Borrowing this limitation period balances both the national interest in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unfair settlement under the collective bargaining agreement. *Id.* The alternative, as the Plaintiff points out, is to use the ten-year Illinois statute of limitations period for written contracts. However, the Supreme Court noted that national labor policy, with its emphasis on grievance, arbitration, and the "law of the shop" would be unworkable if the internal grievance and interpretation process could be called into question by the courts as late as state's contract limitations periods would permit. *Id.* at 169, 103 S.Ct. at 2293.

15

Plaintiff argues that his action is a "straightforward" § 301 suit and the Illinois contract limitation period should thus apply. To this end, Plaintiff asserts that this suit, against only his employer, is more analogous to a typical breach of contract action. However, Plaintiff's argument fails to recognize that the underlying contract in question is the CBA, which establishes that the Union is to be an employee's exclusive representative. Additionally, as indicated above, this "contract" further mandates that the employee submit himself to the grievance process contained therein. Plaintiff prevents the Union from being his exclusive representative by skirting the entire grievance process. In short, Plaintiff seeks to sue on the "contract" as a third-party beneficiary while simultaneously his conduct speaks repudiation of the same contract.

In an action such as the instant case, more is required than to demonstrate that 3M violated the Settlement Agreement or the underlying CBA; the Plaintiff must also assert and prove that the union breached it's duty of fair representation. *United Parcel Service*, 451 U.S. at 62, 101 S.Ct. at 1564. Therefore, in order to prevail, this action must be a hybrid claim. Accordingly, Plaintiff's reliance on *Anderson* is again misguided. As previously stated, the facts of *Anderson* are distinguishable from the case at bar. The suit in *Anderson* was found to be a straightforward suit, as opposed to the necessarily hybrid suit brought by Plaintiff. Hence, this action is more analogous to a NLRA claim than a state breach of contract claim and the six month limitation period should therefore apply.

*Pantoja*, 965 F.2d 323, presents circumstances analogous to the case at bar. Pantoja, a union member, sued his former employer for violation of the collective bargaining agreement when the employer refused to rehire him after he was involved in a trucking accident. *Id.* Pantoja did not formally claim that the union failed to represent him fairly; nevertheless, the court construed the complaint as stating a claim against the union and found it to be a hybrid action subject to the six month statute of limitations. *Id.* at 326. In reviewing the district court's decision, the Seventh Circuit stated that the district court did the plaintiff a favor by construing a simultaneous union claim, because a plaintiff must assert a breach of fair representation in order to have standing to sue. *Id.* Likewise, this Court will construe the Plaintiff as asserting a breach of contract by 3M and a breach of fair representation by Local 232. For when the plaintiff's claims against the employer and the union are inextricably linked, and where the case to be proved is the same against both, a hybrid claim is presented; thus, the plaintiff cannot circumvent the six month statute of limitations by choosing to sue only the employer. Here, Plaintiff's hybrid § 301 claims are subject to the six month statute of limitations. *DelCostello* 462 U.S. 151 at 172, 103 S.Ct. at 2294.

The six-month period, in a case such as this, begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the act constituting the alleged breach of duty. *Pantoja*, 965 F.2d at 327. Within a week of March 16, 1999, Plaintiff called Mr. Thackston, President of Local 232, and asked about the

17

Settlement Agreement. (Thackston Aff. ¶ 5). During this conversation Thackston told Plaintiff that other than the March payment, Plaintiff would not receive any further payments in relation to the Settlement Agreement. (*Id.*). It is at this point that Plaintiff discovers the alleged violation from which this action stems. At oral argument Plaintiff did not refute the dates presented by the Defendant. Nevertheless, Plaintiff filed this instant action in the Circuit Court of Cook County on December 13, 1999. More than eight months passed between the time Plaintiff discovered the alleged violation and the filing of this action. Accordingly, this action is barred by the six-month statute of limitations.

### III. CONCLUSION

Plaintiff failed to exhaust the contractual grievance/arbitration procedures set forth in the Collective Bargaining Agreement initiated between his employer, 3M, and his Union, Local 232. Plaintiff's action fails to allege or prove a breach of fair representation on the part of his Union, Local 232. Finally, this action is barred by the six-month statute of limitations. **Accordingly, 3M's motion for summary judgment is granted and Plaintiff's complaint is dismissed.**

**SO ORDERED THIS 29TH DAY OF JUNE, 2000.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Thomas G. Oddo
Jordan & Oddo LLC
140 South Dearborn Street
Suite 800
Chicago, Illinois 60603

Counsel for Plaintiff

Carol A. Poplawski
Ogletree, Deakins, Murphy, Smith & Polk
Two First National Plaza, 25th Floor
Chicago, Illinois 60603

Counsel for Defendant